UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>**ALEXANDER E. JONES,**<br><br>Debtor. | § Chapter 7<br>§<br>§ Case No. 22-33553 (CML)<br>§ |
| **CHRISTOPHER R. MURRAY,**<br>   **CHAPTER 7 TRUSTEE,**<br><br>Plaintiff,<br>v.<br><br>**RCGJ, LLC AND**<br>**DAVID R. JONES, AS TRUSTEE OF**<br>**THE ALEXANDER E. JONES**<br>**DESCENDANT AND BENEFICIARY**<br>**TRUST.**<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§ Adv. Pro. No. _____<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**TRUSTEE'S COMPLAINT FOR TURNOVER AND ACCOUNTING**

Christopher R. Murray (the "Trustee"), Chapter 7 Trustee for the Bankruptcy Estate (the "Estate") of Alexander E. Jones ("Alex Jones" or the "Debtor"), by and through his undersigned counsel, respectfully alleges as follows:

**NATURE OF ACTION**

1. The Trustee files this complaint (the "Complaint") seeking turnover of a condominium known as "Unit 5" located at 3504 Clawson Road, Austin, TX 78704 ("Clawson Road") pursuant to 11 U.S.C. § 542. Unit 5 is real property held in an otherwise non-operating entity owned 100% by the Estate and must be liquidated for the benefit of the Estate's creditors in

1

accordance with the requirements of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. Once the Debtor decided to disclose the existence of Unit 5 in his schedules, the Debtor valued Unit 5 at $767,400.[1] Despite five attempts at filing sworn schedules and statements in this Bankruptcy Case, the Debtor failed to identify Unit 5 as an asset owned by RCGJ, LLC ("RCGJ"), an entity wholly owned by him.[2] The Debtor always valued his 100% interest in RCGJ at $0.00 in his schedules, except for his original schedules where he did not disclose any interest in RCGJ.

3. The Debtor affirmatively represented in certain sworn schedules that Unit 5 is owned by the Alexander E. Jones Descendant and Beneficiary Trust (the "Trust").[3] It is also the position of the Trust, acting through its Trustee, Dr. David R. Jones ("Dr. Jones"), that the Trust owns Unit 5. Dr. Jones is also the manager of RCGJ. Dr. Jones is the Debtor's father.

4. A cursory review of publicly available records conclusively demonstrates that Unit 5 is owned by RCGJ, a fact that should be known to Dr. Jones since he is the manager of RCGJ and signed documents in that capacity identifying RCGJ as the owner of Unit 5. It is baffling that Dr. Jones would assert that the Trust owns Unit 5 (with his "trustee hat" on) while simultaneously asserting that RCGJ owns Unit 5 (with his "manager hat" on). Thus, any assertion by Dr. Jones,

---

[1] The Debtor did not disclose his interest in RCGJ [Dkt. No. 161, pg. 11 of 43] or the existence of Unit 5 in his original sworn schedules [Dkt. No. 161, pg. 1 through 43]. While the Debtor disclosed his interest in the Trust in his original schedules, he valued the Trust at $0.00 even though he would later represent that it owned valuable real property, including Unit 5 [Dkt. No. 161, pg. 18 of 33]. The Debtor eventually disclosed his 100% ownership interest in RCGJ valued of $0.00 [Dkt. No. 231, pg. 23 of 57] and continued to represent this in all subsequently filed schedules, including the schedules filed after the Conversion Date [Dkt. Nos. 242, 501, and 749]. The Debtor never disclosed that RCGJ owned Unit 5 in any of the five versions of his sworn schedules filed in this Bankruptcy Case.

[2] *See* schedules filed in the Bankruptcy Case at Dkt. Nos. 161 ("Original Schedules"), 231 ("First Amended Schedules"), 242 ("Second Amended Schedules"), 501 ("Third Amended Schedules"), and 749 ("Conversion Schedules").

[3] *See* First Amended Schedules [Dkt. No. 231, pg. 4 of 57], Second Amended Schedules [Dkt. No. 242, pg. 4 of 35], and Conversion Schedules [Dkt. No. 749, pg. 4 of 54]. This disclosure is inexplicably omitted from the Third Amended Schedules [Dkt. No. 501].

acting in his capacity as the trustee of the Trust, that Unit 5 is owned by the Trust is contradicted by Dr. Jones's own admissions as RCGJ's manager and documentary evidence demonstrating that Unit 5 is owned by RCGJ. This Complaint seeks turnover of Unit 5 pursuant to 11 U.S.C. § 542 from RCGJ and/or the Trust. If the Trust answers this Complaint by asserting an ownership interest in Unit 5, the Trustee reserves the right to amend this Complaint to add additional claims against Dr. Jones, including but not limited to, claims for breach of fiduciary duty as the manager of RCGJ.

5. The Debtor understood he was facing massive liabilities and he went to extraordinary lengths to try to keep his non-exempt assets for himself, including sham transactions to transfer assets into entities that he believed would be beyond the reach of creditors. The Debtor's asset protection schemes were often sophisticated attempts at shielding his assets and undertaken with the advice and assistance of professional advisors, friends, and family. Notwithstanding best efforts to move assets outside the reach of creditors, some of the Debtor's attempted asset protection maneuvers failed. It is certain that the Debtor <u>wanted</u> Unit 5 transferred to the Trust as part of his asset protection scheme. However, the Debtor and his enablers fumbled the proverbial "bag" and never actually transferred Unit 5 from RCGJ to the Trust. The Trustee, therefore, brings this Complaint seeking turnover of Unit 5 from RCGJ and/or the Trust so that it may be liquidated for the benefit of the creditors of the Estate.

## JURISDICTION AND VENUE

6. The United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334(b) and the Standing Order of the United States District Court for the Southern District of Texas (the "<u>Southern District of Texas</u>") referring to the Bankruptcy Judges of the Southern District of Texas all cases and proceedings arising under title 11 of the Bankruptcy Code.

7. This adversary proceeding constitutes a "core" proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (E), and (O).

8. The Trustee consents to the entry of final orders or judgments pursuant to Fed. R. Bankr. P. 7008. Pursuant to Bankruptcy Local Rule 7008-1, the Trustee further consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

9. Venue in the Southern District of Texas is and was proper under 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises under and in connection with a case commenced under the Bankruptcy Code.

## PARTIES

**A.  Plaintiff**

10. Plaintiff, Christopher R. Murray is the duly appointed the chapter 7 trustee ("Trustee") for the bankruptcy estate of Alexander E. Jones ("Estate") in the above-referenced bankruptcy case ("Bankruptcy Case") of Alexander E. Jones ("Debtor"). He can be served through counsel of record in this adversary proceeding.

**B.  Defendants**

11. Defendant RCGJ is an active Texas domestic limited liability corporation, formed on March 17, 2016. RCGJ is solely owned by the Debtor and is an asset of the Debtor's chapter 7 Estate. Dr. Jones is the manager of RCGJ and serves as its registered agent. According to its 2024 Public Information Report filed with the Texas Secretary of State, Dr. Jones can be served at 1100 Guadalupe St. Austin, Texas 78701 or wherever he may be found.

4

12. The Trust is a trust that was created by the Debtor under Texas law. The Debtor is the grantor of the Trust. Dr. Jones is the trustee of the Trust. The Debtor claims that he "initially set up" the Trust, but claims that he "presently has no interests" in the Trust and therefore it is not among his assets.[4] The Debtor incorrectly contends that the Trust owns Unit 5 and the Trust agrees with that contention. The Trust can be served through its trustee, Dr. Jones, at his residence at 3402 Clawson Road, Austin, Texas 78704 or wherever he may be found.

## FACTS

**A.  Pre-Petition Events and Bankruptcy Cases**

13. On December 14, 2012, a mass shooting occurred at Sandy Hook Elementary School, resulting in the deaths of twenty first-grade children and six adults. The Debtor and his wholly owned companies began a willful and malicious campaign of defamation and lies against the families of those victims. Subsequently, after another school shooting at Marjory Stoneman Douglas High School in Parkland, Florida in 2018, the Debtor falsely accused Marcel Fontaine of being the shooter.

14. The targets of the Debtor's defamation commenced lawsuits against the Debtor and certain of his companies, including Free Speech Systems, LLC ("FSS"). The first such of actions was filed on April 2, 2018, and subsequent actions followed shortly thereafter. Due to the Debtor's misconduct in those proceedings, including his noncompliance with discovery, default judgments on liability were entered in the Texas Litigation[5] in September 2021 and in the Connecticut Litigation[6] in November 2021.

---

[4] *Debtor's Amended Disclosure Statement with Respect to Debtor's Plan of Reorganization* [Dkt. No. 589], at pg. 6.
[5] *Heslin v. Jones*, Cause No. D-1-GN-18-001835 in the 261st District Court of Travis County, Texas; *Lewis v. Jones*, Cause No. D-1-GN-18-006623 in the 98th District Court of Travis County, Texas; *De la Rosa* and *Pozner v. Jones*, Cause No. D-1-GN-18-001842, in the 345th District Court of Travis County, Texas; *Fontaine v. Jones*, Cause No. D-1-GN-18-001605 in the 459th District Court of Travis County, Texas (collectively, the "Texas Litigation")
[6] *Lafferty v. Jones*, X06-UWY-CV-18-6046436-S, in the Judicial District of Waterbury of the Connecticut Superior Court; *Sherlach v. Jones*, X06-UWY-CV-18-6046437-S, in the Judicial District of Waterbury of the Connecticut

15. Two of the plaintiffs in the Texas Litigation, Neil Heslin and Scarlett Lewis, proceeded to a damages trial. In August 2022, the jury awarded Heslin and Lewis more than $4 million in compensatory damages and approximately $45 million in exemplary damages. The remaining plaintiffs, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine, had not yet proceeded to the damages trial at the time their litigation was stayed by the Debtor's various bankruptcy filings.

16. The Connecticut Litigation also proceeded to trial on the question of damages. In November 2022, the Connecticut Plaintiffs were awarded $965 million in compensatory damages and more than $470 million in additional common law and statutory punitive damages, for a total award of $1,438,139,555.94. The Connecticut Litigation has advanced since the Petition Date: *Lafferty v. Jones*, 327 A.3d 941, 981 (Conn. App. Ct. 2024) (affirming $965 million in compensatory damages in favor of Connecticut plaintiffs); *Lafferty v. Jones*, PSC-240253, Order on Petition for Certification to Appeal (Conn. Apr. 8, 2025) (denying the Debtor's and FSS's petition to appeal the Connecticut judgment to the Connecticut Supreme Court); *Lafferty v. Jones*, AC46131, Order on Motion to Stay (Conn. App. Ct. May 13, 2025) (denying stay of enforcement of Connecticut judgment pending the Debtor's petition for writ of certiorari to the United States Supreme Court).

17. As a result of these liabilities, the Debtor began placing his companies, which were co-defendants in the litigation, into bankruptcy in Spring 2022. Between April 17 and 18, 2022, the Debtor caused InfoW, LLC, IWHealth, LLC and Prison Planet TV, LLC to file for chapter 11

---

Superior Court; and *Sherlach v. Jones*, X06-UWY-CV-18-6046438-S, in the Judicial District of Waterbury of the Connecticut Superior Court (collectively, the "Connecticut Litigation").

bankruptcy protection before this Court.[7] Then on July 29, 2022, the Debtor caused FSS to file for chapter 11 bankruptcy protection before this Court as well.[8]

18.  Finally, on December 2, 2022, the Debtor filed for personal bankruptcy protection under chapter 11 of the Bankruptcy Code (the "Petition Date") before this Court in this Bankruptcy Case.

19.  The Debtor continued managing his assets as debtor and debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code until the Court entered its *Order Converting Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code* [Docket No. 708] on June 14, 2024 (the "Conversion Date"). On the Conversion Date, the U.S. Trustee appointed Christopher R. Murray as the Chapter 7 Trustee in the Jones Chapter 7 Case.

20.  On June 21, 2024, the Court entered an order dismissing the FSS Case [Case No. 22-60043, Docket No. 956], while retaining exclusive jurisdiction over several adversary proceedings and the approval of professional fees and expenses.

**B.   Unit 5**

21.  Property records establish conclusively that Unit 5 is owned by RCGJ.

22.  On March 18, 2016, the Debtor purchased Unit 5 from 3504 Clawson Road LLC. Three days later, he executed an assignment and assumption contract to convey the unit to RCGJ.[9]

23.  On March 30, 2016, 3504 Clawson Road LLC executed a general warranty deed (the "Unit 5 Deed") conveying Unit 5 to RCGJ. On the same day, Dr. Jones, as "Manager on behalf of RCGJ" signed an affidavit of completeness (the "Unit 5 Affidavit") with respect to

---

[7] *In re InfoW LLC*, Case No. 22-60020-CML (Bankr. S.D. Tex. April 17, 2022); *In re IWHealth, LLC*, Case No. 22-60021-CML (Bankr. S.D. Tex. April 18, 2022); *In re Prison Planet TV, LLC*, Case No. 22-60022-CML (Bankr. S.D. Tex. April 18, 2022).
[8] *In re Free Speech Systems LLC*, Case No. 22-60043-CML (Bankr. S.D.T.X. July 29, 2022).
[9] *See* First Amended Schedules [Dkt. No. 231, pg. 4 of 57], Second Amended Schedules [Dkt. No. 242, pg. 4 of 35], and Conversion Schedules [Dkt. No. 749, pg. 4 of 54].

7

improvements made to Unit 5. Both the Unit 5 Deed and the Unit 5 Affidavit were recorded with the County Clerk of Travis County, Texas (the "County Clerk"), on April 1, 2016. The Unit 5 Deed complied in all respects with Texas law and was properly filed.

24. No other document has been filed with the County Clerk since 2016 conveying Unit 5 to any new owner, including the Trust.

25. To the contrary, recent documents filed with the County Clerk confirm that Unit 5 is owned by RCGJ. On January 10, 2024, Dr. Jones, as manager of RCGJ, signed a tax lien contract with Resolution Finance, LLC ("Resolution Finance") in connection with a promissory note for the payment of "ad valorem taxes, penalties, interest and other costs due on" Unit 5, which was filed with the County Clerk on January 17, 2024. In that document, Dr. Jones specifically provides that RCGJ is the "Property Owner" of Unit 5.

26. On January 24, 2024, Bruce Elfant, the Tax Assessor-Collector for Travis County, Texas executed a certified statement of transfer of tax lien (the "Unit 5 Tax Statement") that the $16,290.23 in 2023 taxes, penalties, interest, and collection costs on Unit 5 had been paid by Resolution Finance and tax liens transferred to Resolution Finance. The Unit 5 Tax Statement also solely lists RCGJ under "Property Owner(s) Name(s)." The Unit 5 Tax Statement was filed with the County Clerk on January 31, 2024.

27. Over the years, the Debtor has paid for maintenance, cleaning, upkeep, and various expenses for Unit 5, including insurance coverage.

28. The Debtor has, elsewhere, admitted that RCGJ owns Unit 5. For example, on November 28, 2023, the Debtor's counsel sent an email to Dr. Jones's counsel regarding the Official Committee of Unsecured Creditors' (the "UCC") demand that the Debtor recover any property fraudulently transferred into the Trust. In that email, Debtor's counsel wrote, "I

understand [Dr. Jones] wants to defend any complaint that the condo 6 was fraudulently transferred. See the charges we need to have reimbursed." That email then attached a chart which lists the three units on Clawson Road and lists "RCGJLLC" as the owner of Unit 5.

29. The Debtor's sole basis for his position is one defective document to support the implausible contention that Unit 5 was conveyed to the Trust. The document is a single page document, dated June 30, 2017, entitled "CONVEYANCE of 3504 Clawson Rd, Unit 5 of the Enclave to the Alexander E Jones Descendant and Beneficiary Trust." The document states that Dr. Jones, as manager of RCGJ, "irrevocably convey[s] all title, rights, privileges and duties from the RCGJ LLC to the Alexander E Jones Descendant and Beneficiary Trust" and provides that "[t]his conveyance may be edited to better effect this intended transaction." The document is signed by Dr. Jones as manager of RCGJ. The document is not notarized. The document is not signed by anyone other than Dr. Jones. The document was never recorded. The document does not identify Unit 5 with any specificity; indeed, it does not even state the city, county, state, or zip code of any real property it purports to convey. The document does not show any consideration exchanged for the purported conveyance of real property to the Trust. The document is wholly insufficient under Texas law to convey real property and has no legal effect. RCGJ never transferred any property to the Trust under this document, including Unit 5.

30. The Debtor's contention that the Trust owns Unit 5 is belied by publicly available information that is simple to locate in the public records. A scrap of effort or diligence by Alex Jones would have revealed that Unit 5 was never transferred from RCGJ to the Trust and remains property of RCGJ today. A person need only visit the Travis Central Appraisal District's website to see that RCGJ is the owner of record.[10]

---

[10] *See* Travis Central Appraisal District website at PropertySummaryReport-876925-2025.

31. Alex Jones represented in his sworn schedules that Unit 5 was conveyed by RCGJ to the Trust on May 30, 2017 – he could have only known that if he had seen the document that purports to be a conveyance of Unit 5 from RCGJ to the Trust because that document is not filed anywhere in the public records.[11]

> Case 22-33553   Document 242   Filed in TXSB on 04/18/23   Page 4 of 35
>
> - The mortgage is $1,649.
> - Pays in cash & deposited into PNC DIP depository account (current).
> - David Jones was seller (05/15/2015) and is co-mortgagee.
> o Part 1.3: Lake House - located on Lake Travis
>   - Appraised value of $1,750,000 as of 10/17/2022 by Wheeler Appraisal, LLC prepared for Jordan & Ortiz, P.C.
>   - Lake house was purchased in 2015.
> o Questions regarding condominiums per initial filing:
>   - Condo # 3 – Purchased June 7, 2017, from Grantor, Jeffrey R Skipper & Delee D. Skipper by David Jones solely as the trustee of Alexander E Jones Descendant and Beneficiary Trust (Grantee).
>   - ==Condo # 5== – AEJ conveyed to RCGJ, LLC (March 18, 2016), RCGJ, LLC conveyed to Alexander E Jones Descendant and Beneficiary Trust (June 30, 2017).
>   - Condo # 6 – Purchased February 25, 2016 (original deed) from 3504 Clawson Road, LLC (seller) by RXXCTTGAA Trust (corrected deed filed on April 25, 2016).
>   - ==Insurance== being ==paid by AEJ==; will be transferred for owner to pay all future payments.

(emphasis added).[12]

32. The document purporting to convey Unit 5 to the Trust is so facially deficient that any reasonable person would question whether it actually accomplished a transfer of real property simply by looking at it. Couple that with the ease of discovering public records showing RCGJ is still the owner of Unit 5 and it seriously undermines the credibility of the Debtor's representations to this Court.

33. Alex Jones represented that he personally paid for insurance for Unit 6 pre-petition but transferred it to the "owner" for future payment.[13] This vague reference to "owner" further obfuscates the true ownership of Unit 5.

---

[11] *See* Conversion Schedules [Dkt. No. 749, pg. 4 of 54].
[12] *See* Second Amended Schedules [Dkt. No. 242, pg. 4 of 35]; *see also* First Amended Schedules [Dkt. No. 231, pg. 4 of 57] and Conversion Schedules [Dkt. No. 749, pg. 4 of 54].
[13] *See* Conversion Schedules [Dkt. No. 749, pg. 4 of 54].

34. Moreover, throughout the 8 years since signing the purported "conveyance" of Unit 5 to the Trust on June 30, 2017, Dr. Jones, in his capacity as RCGJ's manager, has continued to sign and publicly file documents identifying RCGJ as the owner of Unit 5.

35. Despite the foregoing, the Debtor disavows the true ownership of Unit 5 and continues to endorse the false narrative that it was conveyed to the Trust. His only basis is the defective, non-descript, non-notarized, unrecorded, single-page "conveyance document" signed by his father.

36. The Debtor has repeatedly admitted in his sworn schedules and in other pleadings filed in this Bankruptcy Case that he owns 100% of RCGJ.[14] But the Debtor has also repeatedly misrepresented the status[15] of RCGJ and the value of RCGJ.[16] The Debtor also admits that his 100% interest in RCGJ is non-exempt property.[17]

37. Unit 5 is valued at $767,400. Accordingly, the Debtor's 100% interest in RCGJ is Estate property that has substantial value and its assets should be liquidated for the benefit of creditors of the Estate.

---

[14] *See* First Amended Schedules [Dkt. No. 231, pg. 23 of 57], Second Amended Schedules [Dkt. No. 242, pg. 21 of 35], Third Amended Schedules [Dkt. No. 501, pg. 11 of 25], and Conversion Schedules [Dkt. No. 749, pg. 18 of 54]; *see also Debtor's Amended Disclosure Statement with Respect to Debtor's Plan of Reorganization* [Dkt. No. 589 at pg. 13 of 150, pg. 91 of 150, and pg. 105 of 150] (conceding 100% ownership of RCGJ but not disclosing RCGJ's ownership of Unit 5).

[15] *See Debtor's Amended Disclosure Statement with Respect to Debtor's Plan of Reorganization* [Dkt. No. 589, pg. 13 of 150](referring to RCGJ as an "Inactive Entity" in which he has a "full ownership interest" but which has been "inactive" and that he does not "intent to revive"). Business records filed with the Texas Secretary of State demonstrate the falsity of the such statements because there are no records indicating a forfeiture or termination of RCGJ at any time since it was formed in 2016.

[16] *See* First Amended Schedules [Dkt. No. 231, pgs. 4 and 23 of 57], Second Amended Schedules [Dkt. No. 242, pgs. 4 and 21 of 35], Third Amended Schedules [Dkt. No. 501, pg. 11 of 25], and Conversion Schedules [Dkt. No. 749, pgs. 4 and 18 of 54]; *see also Debtor's Amended Disclosure Statement with Respect to Debtor's Plan of Reorganization* [Dkt. No. 589], at pg. 13 of 150 (indicating RCGJ is no longer an active operating entity), pg. 91 of 150 (stating value of RCGJ is $0.00), and pg. 105 of 150 (indicating that RCGJ has no value and will not be administered under the Debtor's proposed plan for the benefit of creditors).

[17] *See Debtor's Amended Disclosure Statement with Respect to Debtor's Plan of Reorganization* [Dkt. No. 589, pg. 105 of 150](identifying the Debtor's interest in RCGJ as "non-exempt" property).

## C. The Trust

38. The Trust—known as the Alexander E. Jones Descendant and Beneficiary Trust—was allegedly formed on March 28, 2017, according to a trust agreement dated May 28, 2017 (the "<u>Trust Agreement</u>"). The Debtor is named as the grantor under the Trust Agreement. The Debtor's children are named as beneficiaries in the Trust Agreement. Dr. Jones is named as the trustee of the Trust.

39. Article IX, C of the Trust Agreement requires Dr. Jones to provide an annual accounting to the Grantor of the Trust.

> C. <u>Accounting and Notification to Trust Beneficiaries</u>. The Trustee shall not be required to render an accounting of any trust created hereunder to any court; however, the Trustee shall report, at least annually, all of the receipts, disbursements, and distributions occurring during the reporting period, along with a complete statement of the trust property, to the Grantor, if then living, otherwise to the eldest generation of the Grantor's descendants then eligible to receive distributions from such trust. If any beneficiary to whom an account is so rendered is under a legal disability, the Trustee shall render the account to the beneficiary's parent or other legal representative. The Trustee shall not be required to respond to requests for information regarding the trusts from any beneficiary who is not a current recipient of the annual accounting.

40. The Trustee has not received any accountings from Dr. Jones for the Trust since his appointment on the Conversion Date. The Trustee is unaware of any accountings provided to Alex Jones during the pendency of his chapter 11 case.

## CAUSES OF ACTION

### Count 1
### Accounting from Trust
### Against Dr. Jones
### (11 U.S.C. § 541)

41. The Trustee repeats and realleges each of the allegations set forth above as if fully set forth herein.

42. As trustee of the Trust, Dr. Jones is required to provide an annual accounting to the Grantor under the Trust Agreement dated May 28, 2017.

43. The Trustee stepped into the shoes of the Debtor upon his appointment on the Conversion Date. The Debtor has rights as a "grantor" under the Trust, including the right to remove a trustee for any reason and without cause. The Trustee steps into those rights pursuant to 11 U.S.C. § 541(a)(1).

44. Dr. Jones, as trustee of the Trust, has not provided the required accountings to the Trustee.

45. The Trustee hereby demands from Dr. Jones any and all accountings due pursuant to Article IX, C of the Trust Agreement.

### Count 2
### Turnover of Property
### Against RCGJ, LLC and the Trust
### (11 U.S.C. §§ 541, 542)

46. The Trustee repeats and realleges each of the allegations set forth above as if fully set forth herein.

47. RCGJ is wholly owned by the Debtor.

48. RCGJ has no operations other than holding real property known as Unit 5. The Debtor admits to paying the cost of upkeep and maintenance of Unit 5, including paying for insurance.

13

49. Accordingly, RCGJ should have no creditors, other than possibly ad valorem taxing authorities, which would have a secured interest in the real property known as Unit 5.

50. Unit 5 is believed to be worth upwards of $700,000.00 and should be liquidated for the benefit of the Estate's creditors. But the Debtor and Dr. Jones (as trustee of the Trust) contend that Unit 5 was conveyed by RCGJ to the Trust and cannot be reached. Given Dr. Jones's position as trustee of the Trust that Unit 5 is owned by the Trust, it follows that as manager of RCGJ, he contends there is nothing in RCGJ to liquidate.

51. The purported conveyance of Unit 5 to the Trust was of no legal effect. Among other things, the purported conveyance does not identify the property with sufficient specificity, was not notarized, and was not filed of record with the County Clerk. Moreover, Dr. Jones, who is both the manager of RCGJ and the trustee of the Trust, has signed contracts and filed documents representing that Unit 5 is owned by RCGJ. The last document filed with the County Clerk describing ownership of Unit 5 is a deed conveying it to RCGJ. No other conveyance of Unit 5 has ever been recorded with the County Clerk since then.

52. As the 100% owner of RCGJ, the Trustee is entitled to a determination of the extent of the RCGJ's interest in Unit 5 pursuant to 11 U.S.C. §541.

53. Upon determination that RCGJ is the 100% owner of Unit 5, the Trustee is entitled to turnover of Unit 5 from RCGJ and/or the Trust pursuant to 11 U.S.C. § 542 to permit the Trustee to sell Unit 5 and administer the net proceeds of any such sale for the benefit of creditors of the Estate.

54. The Trustee reserves the right to amend this Complaint to assert any additional claims, including but not limited to claims arising under 11 U.S.C. § 362 and/or under state law for breach of contract and/or fiduciary duty.

## **PRAYER FOR RELIEF**

WHEREFORE, the Trustee respectfully request that this Court enter judgment and grant the following relief:

i. a judgment declaring that RCGJ is the owner of Unit 5 and that the net proceeds from the sale of Unit 5 are property of the Debtor's estate pursuant to 11 U.S.C. § 541, ordering turnover of Unit 5 to the Trustee to be sold, ordering Dr. Jones in his capacity as trustee of the Trust to provide the Trustee with a complete and full accounting of the Trust from inception to present day.

ii. a judgment awarding reasonable attorneys' fees, costs, and expenses incurred in this action to the maximum extent allowable under applicable law; and

iii. a judgment awarding pre- and post-judgment interest, if any, to the maximum extent allowable under applicable law; and

iv. any other and further relief as the Court deems just, proper, or equitable under the circumstances.

[*Remainder of Page Intentionally Blank*]

Dated: June 13, 2025
      Houston, Texas

                        Respectfully submitted,

                        By: */s/ Erin E. Jones*
                        Erin E. Jones (TX 24032478)
                        **JONES MURRAY LLP**
                        602 Sawyer Street, Suite 400
                        Houston, Texas 77007
                        Telephone: (832) 529-1999
                        Fax: (832) 529-3393
                        erin@jonesmurray.com

                        *and*

                        By: */s/ Joshua W. Wolfshohl*
                        Joshua W. Wolfshohl (Bar No. 24038592)
                        Michael B. Dearman (Bar No. 24116270)
                        Jordan T. Stevens (Bar No. 24106467)
                        **PORTER HEDGES LLP**
                        1000 Main Street, 36th Floor
                        Houston, Texas 77002
                        Telephone: (713) 226-6000
                        Facsimile: (713) 226-6248
                        jwolfshohl@porterhedges.com
                        mdearman@porterhedges.com
                        jstevens@porterhedges.com

                        *Counsel for Christopher R. Murray, Chapter 7 Trustee*